UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE EDWARDS,

         Petitioner,

v.                                                          Case No. 15-cv-11728

BONITA HOFFNER,                              HON. MARK A. GOLDSMITH

         Respondent.

_____/

**OPINION & ORDER
(1) DENYING THE HABEAS PETITION (Dkt. 1),
(2) DENYING A CERTIFICATE OF APPEALABILITY,
AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

       Michigan prisoner Willie Edwards ("Petitioner") filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). The petition challenges Petitioner's Wayne County, Michigan convictions for assault with intent to do great bodily harm less than murder and two firearm offenses. Petitioner asserts that the jury instructions were defective, trial and appellate counsel were ineffective, the trial court engaged in ex parte communications with the jury, and he was deprived of counsel during a critical stage of the proceedings. For the reasons stated below, the Court denies the petition for writ of habeas corpus, denies a certificate of appealability, and grants leave to appeal in forma pauperis.

**I. BACKGROUND**

       Petitioner was charged with assault with intent to commit murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The victim, Andrew Paschal, testified that, on January 8, 2010, his wife Dominique Anderson and his mother-in-law Cloria Anderson lived at 5031 Stringham Court in Detroit, Michigan. He did not live with his

1

wife, but he went to visit her that day at approximately 6:30 or 7:00 p.m. Petitioner and several other people were there at the time. He and Dominique got into a verbal and physical fight, but he did not have a gun on him, and he left the house with his wife's cousin, Devae Sanders. He and Sanders went to a party store and then walked back to his wife's home. On the way there, he saw Petitioner inside the home of Petitioner's cousin, which was about four or five townhouses away from Dominique's townhouse. As Paschal approached Dominique's home, he heard a gunshot behind him. He turned and saw Petitioner standing there with a weapon in his hand. He asked Petitioner what he was doing with the gun. Petitioner said something and then shot him in the leg. He tried to grab Petitioner's gun, which was pointed at him, and as the two of them wrestled, the gun went off and he got hit in the arm. He was hit a third time in the chest near his armpit. He recognized the gun used in the shooting as one that his mother-in-law kept in the house. After the shooting, he went home, assisted by Devae Sanders. He required surgery for his gunshot wounds and eventually informed both his wife and some detectives who had shot him. 5/24/10 Trial Tr. at 98-119, PageID.465-476 (Dkt. 8-7).

Detroit police officer Aaron Colwell testified that he was sent to 5031 Stringham Court after 8:00 p.m. on January 8, 2010. He found two casings on the front porch, and he saw a trail of blood leading away from the porch. Inside the house, he found a manufacturer's box for a Smith and Wesson .40 caliber handgun and live ammunition for a .40 caliber handgun, but no weapon was recovered. 5/25/10 Trial Tr. at 26-44, PageID.539-557 (Dkt. 8-8).

Police Officer Raymond Diaz was the evidence technician assigned to the case. He arrived at the crime scene at 11:50 p.m. on January 8. He observed drops of blood leading away from the porch and two casings on the porch. Inside the house, there was an empty box for a .40 caliber

Smith and Wesson gun in a bedroom closet and .40 caliber live ammunition in a dresser drawer, but no weapon was recovered.  Id. at 54-65, PageID.567-578.

Dominique Anderson testified under a grant of immunity due to certain conversations that she had with Petitioner while Petitioner was in jail.  Id. at 130, PageID.643.  Dominique explained that Paschal was her husband, Cloria Anderson was her mother, and Petitioner was her mother's boyfriend.  On January 8, 2010, she was living with her mother, Petitioner, her brother, and her children at 5031 Stringham Court.  Several people, including Petitioner and Devae Sanders, were listening to music and drinking alcoholic beverages at the house that evening.  Paschal was also there, and she got into an argument with him.  After Petitioner told Paschal to leave, Paschal went to the party store with Sanders.  Paschal returned from the store and made a vulgar comment to the group inside the house.  Petitioner then left the house, and she got into another argument and physical fight with Paschal.  Sanders and Paschal subsequently left the house a second time.  She did not see a weapon on Paschal, but she later heard two or three gunshots in front of her home, and her mother said that Petitioner had shot Paschal.  She had seen Petitioner with a clip to a gun a few hours earlier, and she had seen Petitioner with her mother's gun on two prior occasions.  The gun was missing when she went to look for it after Paschal was shot, and when she ran outside, Paschal told her that Petitioner had shot him.  Id. at 77-113, PageID.590-626.

Continuing, Dominique testified that Petitioner did not return to the house after the shooting, but he subsequently called the house from jail and offered to pay Paschal $20,000 for not appearing in court.  Petitioner suggested making payments in increments of $800, but he never made any payments.  Petitioner also asked Dominique to tell Paschal that he was sorry and that he did not mean to do it.  Id. at 115-132, PageID.628-645.

Petitioner was the only defense witness. He testified that during Paschal's second fight with Dominique on January 8, 2010, Paschal had a gun in his waistband. After Paschal and Devae Sanders left the house, Petitioner grabbed the loaded gun from the bedroom because Dominique tended to do stupid things with the gun after she and Paschal fought. He then left for his cousin Robert Harris's house, which was a short distance away. After spending twenty to thirty minutes at his cousin's house, he went to buy cigarettes and walked past Paschal. Then he walked to Dominique and Cloria's residence at 5031 Stringham Court. As he approached the porch, somebody said, "Watch out." He turned around and saw Paschal approaching him with a gun. He pulled out his gun and shot into the ground two times. He was about ten to twelve feet away from Paschal at the time. Paschal then raised his hand to shoot him, but Paschal dropped his gun when his hand hit the railing. Then the two of them wrestled for Petitioner's gun, and the gun went off two times. The gun dropped to the ground. He then lit a cigarette, walked down the street, called a cab, and went to his brother's house. 5/26/10 Trial Tr. at 9-30, PageID.696-717 (Dkt. 8-9). Petitioner denied trying to bribe anyone to beat the charges against him. He also denied trying to hide the gun or any casings. Id. at 31-35, PageID.718-722.

The defense theory was that Petitioner lacked the intent to be found guilty of assault with intent to commit murder, and that, even if the jury thought he acted with intent to do great bodily harm less than murder, he acted in self-defense. Id. at 141-142, PageID.828-829. On May 27, 2010, the jury found Petitioner guilty of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.82, as a lesser-included offense of assault with intent to commit murder. The jury also found Petitioner guilty, as charged, of felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. 5/27/10 Trial Tr. at 4-5, PageID.867-868 (Dkt. 8-10). The trial

4

court sentenced Petitioner as a habitual offender to two years in prison for the felony-firearm conviction, followed by concurrent terms of ten to thirty years in prison for the assault and felon-in-possession convictions. 6/14/10 Sentence Tr. at 8-10, PageID.880-882 (Dkt. 8-11).

In an appeal of right, Petitioner argued that: (i) the prosecution failed to present sufficient evidence to support his assault conviction; (ii) the trial court (a) improperly refused the deliberating jury's reasonable request to review the complaining witness's testimony and (b) foreclosed the possibility of allowing the jury to review the testimony; and (iii) trial counsel deprived him of effective assistance by acquiescing in the trial court's response to the jury's request to review the complaining witness's testimony. The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in an unpublished, per curiam opinion. See People v. Edwards, No. 299263 (Mich. Ct. App. Sept. 22, 2011). Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues. See People v. Edwards, 809 N.W.2d 585 (Mich. 2012).

Petitioner raised his habeas claims in a motion for relief from judgment, which the trial court denied. The trial court addressed the merits of Petitioner's claims and also concluded under Michigan Court Rule 6.508(D)(3)(b) that Petitioner had not established actual prejudice from the alleged irregularities that supported his claims. See People v. Edwards, No. 10-3027-FC (Wayne Cty. Cir. Ct. Mar. 6, 2013) (Dkt. 8-13); Register of Actions (Dkt. 8-1). The Michigan Court of Appeals denied leave to appeal the trial court's decision on the basis that Petitioner had failed to establish entitlement to relief under Rule 6.508(D). See People v. Edwards, No. 318081 (Mich. Ct. App. Mar. 14, 2014). On December 30, 2014, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Edwards, 857 N.W.2d 17 (Mich. 2014).

On May 14, 2015, Petitioner filed his habeas corpus petition. He raises the following six claims: (i) trial counsel was ineffective for requesting a jury instruction on the duty to retreat, and the trial court erred by giving the requested instruction; (ii) the trial court abused its discretion by giving a jury instruction on "deadly aggressor-withdrawal" after prohibiting any testimony about Petitioner's aggressive behavior, and trial counsel was ineffective for requesting the instruction; (iii) the trial court engaged in <u>ex parte</u> communications with the jury by answering two of the jury's questions in Petitioner's and his attorney's absence; (iv) trial counsel provided ineffective assistance when he failed to (a) investigate multiple 911 calls and (b) call witnesses to testify in Petitioner's favor; (v) he was denied effective assistance of counsel during the reading of the jury's verdict; and (vi) appellate counsel was ineffective for failing to raise numerous "dead-bang winner" issues on direct appeal. Pet. at 5-11, PageID.5-11 (Dkt. 1).

Respondent Bonita Hoffner urges the Court to deny the petition on grounds that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or meritless. Respondent also claims that the state-court decisions were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Resp't Answer to Pet. at i-v, 104, PageID.150-154, 259 (Dkt. 7).

To obtain habeas relief on procedurally defaulted claims, a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." <u>Babick v. Berghuis,</u> 620 F.3d 571, 576 (6th Cir. 2010). Petitioner's claims do not warrant habeas relief, and the Court finds it more efficient to address their merits than to analyze whether the claims are procedurally defaulted. Accordingly, the Court excuses the alleged procedural defaults and "cut[s] to the merits here," as "the cause-and-prejudice analysis adds nothing but complexity to the case." <u>Id</u>.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for

evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 520 U.S. 520, 525 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal courts, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

A state-court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III. ANALYSIS

### A. The Jury Instruction on Duty to Retreat

Petitioner alleges that trial counsel was ineffective for requesting a jury instruction on the duty to retreat before using deadly force in self-defense and that the trial court erred by instructing the jury on the duty to retreat. Petitioner contends that he had no duty to retreat from his own home or from the curtilage of his home, and because the testimony at trial suggested that the shooting occurred on the porch to his home, the jury was misled by the instruction on the duty to retreat. Pet. at 5, PageID.5; Brief in Support of Pet. at 8-14, PageID.45-51.

The trial court adjudicated this claim on post-conviction review and concluded that the duty-to-retreat instruction was warranted as part of the instruction on self-defense because there was evidence that the shooting involved a confrontation between Petitioner and the victim during which a struggle ensued. The trial court also opined that trial counsel was not ineffective for requesting the instruction.

### 1. Clearly Established Federal Law

#### a. Jury Instructions

The Supreme Court has said that "[a] trial judge's duty is to give instructions sufficient to explain the law, an obligation that exists independently of any question from the jurors or any other indication of perplexity on their part." Kelly v. South Carolina, 534 U.S. 246, 256 (2002). But "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). The only question on habeas review of jury instructions is whether the ailing instruction infected the entire trial to the extent that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.'" Buell v. Mitchell, 274 F.3d 337, 355 (6th Cir. 2001) (quoting Scott v. Mitchell, 209 F.3d 854, 882 (6th Cir. 2000)).

### b. Ineffective-Assistance-of-Counsel Claims

To prevail on his claim about trial counsel, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. A defendant must

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To summarize, "[c]ounsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial." Maryland v. Kulbicki, 136 S. Ct. 2, 3 (2015) (emphasis omitted).

## 2. Application

At Petitioner's trial, defense counsel initially requested a jury instruction on the use of deadly force in self-defense, and he said that he thought the prosecution would be asking for a jury instruction on the duty to retreat to avoid using deadly force. 5/25/10 Trial Tr. at 9-10, PageID.522-523. On the following day, defense counsel stated that he would be asking for a jury instruction on self-defense, and that he and the prosecution were also asking for a jury instruction on the duty to retreat. 5/26/10 Trial Tr. at 100, PageID.787. The trial court subsequently instructed the jury that

> [a] person can use deadly force in self-defense only where it's necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly or reasonabl[y] believed he needed to use deadly force in self-defense.
>
> However, a person is never required to retreat if attacked in his own home. [Or] [i]f the person reasonably believes that an attacker is about to use deadly force, or if the person is subject to a sudden, fierce and violent attack.
>
> Further, a person is not required to retreat if the person has not, or is not engaged in the commission of a crime at the time the deadly force is used, and has a legal right to be where the person is at the time, and has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death or great bodily harm of the person or another.

5/26/10 Trial Tr. at 167, PageID.854.

Petitioner concedes that this instruction complied with Michigan jury instruction CJI2d 7.16, but he contends that he had no duty to retreat because he was on his own porch and the duty to retreat was not in dispute. Brief in Support of Pet. at 12, PageID.49. Petitioner maintains that the trial court should have instructed the jury that his porch was a part of his dwelling and, without such an instruction, the jury was free to conclude that he was outside his home and had a duty to retreat.

Under Michigan law, Petitioner had no duty to retreat because the evidence established that the altercation in question occurred on his porch. Mich. Comp. Laws § 768.21c; People v. Richardson, 803 N.W.2d 302, 303 (2011). But even assuming that the trial court erred by failing to instruct the jury that Petitioner had no duty to retreat from his porch, a jury instruction that is incorrect under state law is not a basis for habeas relief. McGuire, 502 U.S. at 71-72.

Furthermore, even if the trial court had instructed the jury that the porch was part of the house and that Petitioner had no duty to retreat from the porch, the jury still would have had to decide whether Petitioner honestly and reasonably believed that he was entitled to use deadly force to defend himself. Richardson, 803 N.W.2d at 305-306. Paschal and his wife Dominique testified that Paschal was not armed on the day in question. 5/24/10 Trial Tr. at 103, PageID.470; 5/25/10 Trial Tr. at 94, PageID.607. Although Petitioner testified that Paschal had approached him with a gun, he also claimed that he fired two gunshots into the ground in front of Paschal before Paschal raised his gun and that Paschal subsequently dropped the gun when he hit his hand on a porch railing. According to Petitioner, Paschal then attempted to get Petitioner's gun, but he never gained control of it, and the gun fired two times as they struggled over the gun. 5/26/10 Trial Tr. at 22-28, 64-68, PageID.709-715, 751-755. Significantly, Petitioner went on to say that he walked down the street after the shooting, leaving both guns at the site of the shooting and not knowing whether

Paschal had been shot. He also failed to call the police to report the incident. Id. at 30, 81-82, 91, 94, PageID.717, 768-769, 778, 781. There was additional evidence that Petitioner had tried to bribe Paschal into not testifying. The jury could have inferred from all the evidence that Petitioner did not have an honest and reasonable belief that deadly force was necessary to prevent death or imminent great bodily harm.

Furthermore, Petitioner testified that he could not have retreated inside the house because the door was closed behind him and because Paschal was standing ten to twelve feet away from him with a gun. Id. at 28, 57, PageID.715, 744. Defense counsel argued to the jury that Petitioner had no duty to retreat and that Petitioner could not have retreated because his back was facing a closed door as Paschal approached him. Id. at 130, 132, PageID.817, 819.

For all these reasons, the trial court's failure to instruct the jurors that Petitioner did not have a duty to retreat from his porch did not deprive Petitioner of due process or a fair trial. In addition, to the extent that defense counsel requested, or acquiesced in the prosecution's request for, a jury instruction on the duty to retreat, his allegedly deficient performance did not prejudice the defense. Petitioner's claim does not warrant habeas relief.

**B. The Jury Instruction on "Deadly Aggressor-Withdrawal"**

Petitioner alleges next that the trial court abused its discretion and prejudiced him by giving the standard Michigan jury instruction on "Deadly Aggressor-Withdrawal." Petitioner's defense was that he acted in self-defense, and the trial court had previously ruled that the prosecutor could not introduce any evidence of Petitioner's aggressive behavior. Petitioner, therefore, argues that there was no need for a jury instruction on deadly aggressors, that the instruction negated his claim of self-defense and the trial court's prior ruling, and that the jury instruction embedded in the jurors' minds that he could be perceived as an aggressor. Petitioner also alleges that his attorney

was ineffective for requesting the instruction.  Pet. at 6, PageID.6; Brief in Support of Pet. at 17-21, PageID.54-58.

The state trial court adjudicated this claim during post-conviction proceedings.  It concluded that the instruction on deadly aggressors was proper and necessary because the jury was required to evaluate Petitioner's conduct in deciding whether he initiated an assault on the victim with deadly force or with a dangerous or deadly weapon.

### 1. Clearly Established Federal Law

As previously explained, a jury instruction that is incorrect under state law is not a basis for habeas relief.  McGuire, 502 U.S. at 71-72.  The only question on habeas review of jury instructions is whether the ailing instruction rendered the trial fundamentally unfair and deprived the petitioner of due process.  Id., at 72; Buell, 274 F.3d at 355.

### 2. Application

Counsel for Petitioner initially did not request an instruction on "deadly aggressor-withdrawal."  Instead, he stated that he thought the prosecution would request the instruction. 5/25/10 Trial Tr. at 10, PageID.523.  On the following day, defense counsel said,

> I will be asking for [a jury instruction on] self-defense. . . .  We are also asking for the duty to retreat, not at [sic] initial aggressor 7.16.  That is in the packet [of jury instructions].

5/26/10 Trial Tr. at 100, PageID.787.  The trial court subsequently instructed the jurors that:

> The defendant does not have to prove that he acted in self defense.  Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense.

Id. at 167-168, PageID.854-855.  The disputed instruction followed:

> A person who started an assault on someone else with deadly force with a dangerous or deadly weapon, cannot claim that he acted in self-defense unless he genuinely stopped his assault and clearly let the other person know that he wanted

14

to make peace. Then, if the other person kept on fighting or started fighting again, the defendant had the same right to defend himself as anyone else, and could use force to save himself from immediate physical harm.

Id. at 168, PageID.855.

This instruction was necessary because Petitioner's defense was that he acted in self-defense and because there was some evidence that Petitioner initiated the fight with Paschal. It remained for the jury to decide whether Petitioner was the aggressor in the altercation and, if so, whether he stopped the assault and let Paschal know that he wanted to make peace.

To conclude, the disputed jury instruction on "deadly aggressor-withdrawal" was proper and necessary. Therefore, Petitioner was not deprived of a fair trial or due process of law when the trial court read the instruction.

Petitioner's related claim about trial counsel lacks merit because the instruction on "deadly aggressor-withdrawal" was proper and necessary. Where the underlying claim about a jury instruction lacks merit, counsel is not ineffective for failing to object to the instruction. Hoffner v. Bradshaw, 622 F.3d 487 (6th Cir. 2010).

## C. Ex Parte Communications

Petitioner asserts that the trial court answered two of the jury's questions in his and his attorney's absence. Petitioner alleges that the trial court's response to the jury's questions was an improper ex parte communication during a critical stage of the proceedings and that he did not waive his right to be present or to have counsel present during the ex parte communication. Pet. at 7, PageID.7; Brief in Support of Pet. at 22-28, PageID.59-65.

The trial court found no merit in this claim during post-conviction review of the issue. The court noted that there was no record evidence of any ex parte communication and that Petitioner

had failed to establish that the questions in dispute were actually answered outside his or defense counsel's presence.

The Supreme Court's "cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." Rushen v. Spain, 464 U.S. 114, 117 (1983). "Ex Parte communications are absolutely discouraged and a question from the jury should be answered in open court, after providing the defendant with an opportunity to be heard." United States v. Paul, 57 F. App'x 597, 604 (6th Cir. 2003) (citing Rogers v. United States, 422 U.S. 35, 39 (1975), and United States v. Reynolds, 489 F.2d 4, 7–8 (6th Cir. 1973)).

The disputed questions and responses in this case occurred after defense counsel finished cross-examining police officer Raymond Diaz. The jury was permitted to submit written questions to Officer Diaz, who responded to the questions while he was still on the witness stand testifying. The first question was, "Of the casings found, did they match the live round in the dresser?" Officer Diaz answered, "Yes, they did. They were Winchester .40 caliber." 5/25/10 Trial Tr. at 71, PageID.584. The second question was, "When you fire a .40 caliber Smith & Wesson handgun, do the shells eject automatically?" Officer Diaz answered, "Unless it has a malfunction." Id. at 71-72, PageID.584-585.

The record indicates that Petitioner and his attorney were present during this testimony and that there was no ex parte communication between the judge and the jurors. Therefore, the trial court's findings and conclusions – that there was no ex parte communication and that the questions in dispute were not answered in Petitioner's or defense counsel's absence – were reasonable determinations of the facts. Petitioner has no right to relief on his claim.

### D. Trial Counsel's Omissions

Petitioner asserts in claim four that his trial attorney's omissions deprived him of effective assistance of counsel.

### 1. Failure to Investigate

Petitioner alleges first that trial counsel was ineffective for failing to investigate 911 calls that certain individuals made to the police concerning Paschal's violence. Petitioner asserts that testimony about these calls would have shown that Paschal had an aggressive nature and that Petitioner had reason to fear Paschal when Paschal approached him with a gun on January 8, 2010. Brief in Support of Pet. at 31-35, PageID.68-72.

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," Strickland, 466 U.S. at 691, and in this case, defense counsel did argue in favor of introducing evidence of Paschal's violent behavior. 5/24/10 Trial Tr. at 15-18, PageID.382-386; 5/26/10 Trial Tr. at 3-5, PageID.690-692. The trial court, however, stated that the evidence was inadmissible unless Petitioner could show that Paschal had a reputation for being violent and that Petitioner actually knew about Paschal's aggressive behavior. 5/24/10 Trial Tr. at 17-18, PageID.384-385. The prosecutor, moreover, maintained that under People v. Nichols, 335 N.W.2d 665, 667-668 (Mich. Ct. App. 1983), specific instances of violent conduct unrelated to a homicide are not admissible to prove that the victim acted in conformity therewith. 5/24/10 Trial Tr. at 3, PageID.370.

Furthermore, it is unclear from transcripts of the 911 calls whether Paschal was even the subject of the 911 calls. See 911 Transcripts, Ex. K to Pet, PageID.124. One of the transcripts, in fact, appears to indicate that the suspect was someone named Andrew Caskell. See id., PageID.127.

Finally, Petitioner has failed to demonstrate that evidence of the 911 calls would have resulted in a different outcome, because there was other evidence that Paschal was an aggressive and violent person. Paschal testified at trial that he bit his wife on January 8, 2010, and that he had engaged physical altercations with his wife on other occasions. 5/24/10 Trial Tr. at 103, 129, PageID.470, 496. His wife testified that during the fights on January 8, 2010, Paschal struck her, bit her on her cheek and arm, and threw a "baby bouncer thing" at her. 5/25/10 Trial Tr. at 89, 92, 161, PageID.602, 605, 674. On a prior occasion, she reported Paschal to the police due to his assaultive behavior, but she did not press charges against him. Id. at 155, 157, PageID.668, 670. Petitioner, moreover, testified that Paschal was beating Dominique with his fists before the shooting on January 8, 2010. 5/26/10 Trial Tr. at 11, PageID.698. For all the foregoing reasons, trial counsel's handling of the 911 calls did not amount to deficient performance and, regardless, the allegedly deficient performance did not prejudice the defense.

### 2. Failure to Call Witnesses

Petitioner asserts that trial counsel was ineffective for failing to investigate and call several witnesses to testify in support of his defense that he acted in self-defense. Pet. at 8, PageID.8, and Brief in Support of Pet. at 30-31, PageID.67-68.

The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005). An attorney's "failure to conduct a reasonable investigation into . . . 'a known and potentially important witness' violate[s] [a defendant's] Sixth Amendment right to the effective assistance of counsel." Id. at 259 (quoting Blackburn v. Foltz, 828 F.2d 1177, 1183 (6th Cir. 1987)); see also Pillette v. Berghuis, 408 F. App'x 873, 884 (6th Cir. 2010) ("The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the

defense."). But under <u>Strickland</u>, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." <u>Cathron v. Jones</u>, 77 F. App'x 835, 841 (6th Cir. 2003) (citing <u>Hutchison v. Bell</u>, 303 F.3d 720, 749 (6th Cir. 2002)). "'A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant.'" <u>Millender v. Adams</u>, 376 F.3d. 520, 527 (6th Cir. 2004) (quoting <u>Millender v. Adams</u>, 187 F. Supp.2d 852, 877 (E.D. Mich. 2002) (citing <u>Marra v. Larkins</u>, 111 F. Supp. 2d 575, 585 n.13 (E.D. Pa. 2000)).

Petitioner alleges that trial counsel should have investigated Devae Sanders, Felicia Sanders, Crystal Wilkes, Derrick Montgomery, Robert Harris, Vittorio Edwards, Cedric Allen, "Kim," and certain unidentified neighbors. Petitioner alleges that Devae Sanders and Crystal Wilkes were on the prosecutor's witness list, but his attorney never investigated them.

The record indicates that Wilkes was a neighbor who called 911 to report the shooting incident, 5/25/10 Trial Tr. at 38, PageID.551, and that Sanders may have been present at the time of the shooting, 5/26/10 Trial Tr. at 30-31, 55, PageID.717-718, 742. But it is unclear whether Wilkes actually observed the shooting, and Sanders refused to speak with the police who responded to the crime scene. 5/25/10 Trial Tr. at 45, PageID.558. In addition, defense counsel stated during closing arguments that he wished Sanders would have been present to testify because Sanders could have cleared up some things. 5/26/10 Trial Tr. at 132, PageID.819. This comment suggests that Sanders may have been unwilling or unable to testify.

As for Robert Harris and Vittorio Edwards, they have signed affidavits stating that Petitioner was not inside their home before 8:00 p.m. on January 8, 2010, when Paschal allegedly saw Petitioner there. <u>See</u> Harris Aff., Ex. I to Pet., PageID.121; Edwards Aff., Ex. J to Pet., PageID.123. Petitioner claims that this information could have been used to attack Paschal's

credibility, but Petitioner himself testified that he went to Harris's home before the shooting. 5/26/10 Trial Tr. at 19, PageID.706.

Furthermore, Petitioner has failed to show that Harris, Edwards, Sanders, and Wilkes or any of the other individuals he names as potential witnesses would have testified that he acted in self-defense. Because Petitioner has not offered any evidence, beyond his own assertions, to prove what the witnesses would have said if they had testified, he cannot show that he was prejudiced by the omission of their testimony. Clark v. Waller, 490 F.3d 551, 557 (6th Cir. 2007).

Trial counsel's failure to pursue Petitioner's purely speculative claim that the witnesses would have supported his defense does not fall below an objective standard of reasonableness. Therefore, trial counsel's failure to investigate and produce the witnesses did not amount to ineffective assistance, and the state trial court's rejection of Petitioner's claims about trial counsel was not contrary to, or an unreasonable application of, Strickland.

### E. The Alleged Absence of Counsel During a Critical Stage

Petitioner contends that he was denied effective assistance of counsel during the jury's deliberations. Although he had substitute counsel, he claims that the substitute attorney was uninformed, that he never waived his right to counsel, and that he did not have an opportunity to object to stand-in counsel. Brief in Support of Pet. at 36-47, PageID.73-84.

The trial court reviewed this issue during post-conviction proceedings and stated that, even assuming stand-in counsel was uninformed, as Petitioner alleged, Petitioner had not shown how the result of the proceedings would have been different absent the alleged error. The trial court concluded that Petitioner had failed to prove his claim of ineffective assistance.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'" Marshall v.

Rodgers, 569 U.S. 58, 62 (2013) (quoting Iowa v. Tovar, 541 U.S. 77, 80–81 (2004)); see also Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (stating that, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings."). The giving of a supplemental jury instruction is a critical stage. French v. Jones, 332 F.3d 430, 438-439 (6th Cir. 2003). The return of the jury's verdict also is a critical stage. United States v. Smith, 411 F.2d 733, 736 (6th Cir. 1969).

At the close of the third day of Petitioner's trial and after the jury began its deliberations, counsel for Petitioner informed the trial court that he had to be in another county on the following day for pretrial matters in other cases. Counsel asked the trial court whether it would be alright if substitute counsel stood in him for him then. The trial court approved defense counsel's request to be absent on the following day. Petitioner did not object, but it is also true that the trial court did not address him on the record to determine whether he was willing to have substitute counsel represent him. 5/26/10 Trial Tr. at 174, PageID.861.

On the following day, the trial court informed the parties that the jury had reached a verdict. The court also described the content of notes that the deliberating jury had sent to the court and what the court and the attorneys had done in response to the jury's notes. An attorney then announced that he was substituting for the defense attorney of record. The jury subsequently entered the courtroom and announced its verdict. 5/27/10 Trial Tr. at 3-5, PageID.866-868. At no point was Petitioner deprived of counsel, and "[t]he inconvenience of having substitute counsel stand in for a brief moment is in no way comparable to the complete denial of one's chosen counsel for the entirety of litigation." Moritz v. Lafler, 525 F. App'x 277, 287 (6th Cir. 2013).

Although Petitioner claims that substitute counsel was uninformed, he has not alleged what substitute counsel should have done or how he was prejudiced by counsel's representation.

"Counsel cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to <u>effective</u> representation is not 'complete' until the defendant is prejudiced." <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 147 (2006) (citing <u>Strickland</u>, 466 U.S. at 685) (emphasis in original).

The Court concludes that Petitioner was not deprived of his constitutional right to effective assistance of counsel during the brief time that he was represented by substitute counsel. Habeas relief is not warranted on his claim.

### F. Appellate Counsel

In his sixth and final claim, Petitioner alleges that appellate counsel was ineffective for failing to raise his first five claims during the appeal of right. Petitioner contends that habeas claims one through five were "dead bang winners" and that appellate counsel was ineffective for raising weaker issues. Pet. at 11, PageID.11; Brief in Support of Pet., pp. 41-47, PageID.78-84. The state trial court opined on review of this claim that appellate counsel's decision not to pursue the issues did not amount to ineffective assistance, because the issues would not have resulted in reversal on appeal.

"[I]neffective assistance of appellate counsel claims are governed by the same <u>Strickland</u> standard as claims of ineffective assistance of trial counsel." <u>Shaneberger v. Jones</u>, 615 F.3d 448, 452 (6th Cir. 2010) (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000)). To prevail on his claim, Petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." <u>Id</u>. (citing <u>Strickland</u>, 466 U.S. at 687). This requires demonstrating (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability he would have prevailed on appeal if his attorney had raised the issues. <u>Robbins</u>, 528 U.S. at 285-286 (citing <u>Strickland</u>, 466 U.S. at 687-691, 694).

For the reasons given in this opinion, Petitioner's first five claims lack merit. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001). Therefore, the state trial court's rejection of Petitioner's claim about appellate counsel was neither contrary to, nor an unreasonable application of, Strickland or Robbins.

**G. Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal**

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court, therefore, declines to issue a certificate of appealability. The Court, nevertheless, will allow Petitioner to proceed in forma pauperis on appeal because the Court granted him permission to proceed in forma pauperis in this Court (Dkt. 3), and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**IV. CONCLUSION**

For the reasons stated above, the Court denies the petition for writ of habeas corpus (Dkt. 1), denies a certificate of appealability, and grants leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> on appeal.

SO ORDERED.

Dated: July 16, 2018　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2018.

　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　Case Manager